UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALEXANDER LEE, *individual and on behalf of his infant daughter* K.L.,

                              *Plaintiffs,*

– against –

AIR CHINA LIMITED,

                              *Defendant.*

---

**MEMORANDUM & ORDER**
25-cv-02235 (NCM) (CHK)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Alexander Lee brings this action individually, and on behalf of his infant daughter, K.L., against defendant Air China Limited (hereinafter "defendant" or "Air China") for injuries arising from defendant's refusal to check plaintiff and K.L. in for their flights. *See generally* Third Amend. Compl. ("TAC"), ECF No. 20. Defendant moves to dismiss the complaint contending, among other things, that plaintiff's claims are preempted by the Montreal Convention. *See* Mot.[1] For the reasons stated below, defendant's motion to dismiss is **DENIED**.

## BACKGROUND

---

[1]      The Court hereinafter refers to Defendant Air China Limited's Memorandum of Law in Support of its Motion to Dismiss, ECF No. 25, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 26, as the "Opposition"; and Defendant Air China Limited's Reply Memorandum of Law in Support of its Motion to Dismiss, ECF No. 27, as the "Reply."

On February 2, 2025, plaintiff, Alexander Lee, and his daughter, K.L., arrived at John F. Kennedy International Airport in New York City for a round-trip flight operated by Air China. Plaintiff had purchased tickets for them to travel between New York City and Beijing, China. TAC ¶ 6; *see* Wang Decl. Ex. A ("Ticketing Information for Plaintiff and Daughter") at 4, ECF No. 25-1.[2] When plaintiff and his daughter arrived at the check-in counter, however, Air China staff did not permit them to check in for their flight. TAC ¶ 7. Plaintiff and K.L. were refused by Air China's counter agent who stated that, due to K.L.'s disability—epilepsy, a medical letter was required before they could travel. TAC ¶ 7; *see* Wang Decl. Ex. C ("Letter from Dr. Madhoolika Verma, pediatrician") at 49, ECF No. 25-1. Plaintiff informed the counter agent that K.L. had traveled previously on Air China without a medical letter. TAC ¶ 11. Nevertheless, on this instance, Air China required a medical letter affirming her fitness to travel. TAC ¶ 7.

Plaintiff requested the official written policy basis of the medical letter requirement, but Air China's counter agent did not provide such a policy, whether Air China's Conditions of Carriage or something else. But instead told plaintiff to "Google it." TAC ¶¶ 8–9. Plaintiff offered that his wife, K.L.'s mother, who is a licensed pediatrician, could confirm K.L.'s fitness to fly. TAC ¶ 12. Air China refused to accept this offer. TAC ¶ 12. Prevented from boarding their flight by Air China, plaintiff and his daughter returned home. TAC ¶ 17.

The following day, plaintiff contacted Air China to rebook the flight. TAC ¶ 14. At this time, he learned Air China had marked him and his daughter as no-shows for their flights the day before. TAC ¶ 14; *see* Ticketing Information for Plaintiff and Daughter. As

---

[2]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

a result, he would be required to pay a change penalty to book a new flight. TAC ¶ 14. Plaintiff was forced to purchase tickets on another airline. TAC ¶ 18. This new itinerary was aboard standard economy because the other airline did not offer premium economy. TAC ¶ 18.

As a result of being refused check-in and missing their original flight on Air China, plaintiff's daughter was denied medical treatment for epilepsy, which she was scheduled to receive in China. TAC ¶ 17. Missing treatment caused plaintiff's daughter a setback in her health and well-being. TAC ¶ 17. Plaintiff and his daughter endured a more taxing travel itinerary with a lengthy layover, requiring a several hours long hotel stay during the return trip. TAC ¶ 18. Plaintiff and his daughter also suffered significant physical and emotional hardship. TAC ¶ 1. Defendant issued plaintiff a refund on the Air China tickets in early April 2025. TAC ¶ 19.[3]

**LEGAL STANDARD**

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's

---

[3]    Both parties have submitted declarations that include additional allegations with their respective briefs; defendant has also included three exhibits. In deciding a motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). For purposes of deciding defendant's motion to dismiss, the Court will consider, to the extent necessary, defendant's exhibits concerning plaintiff's ticketing information and K.L.'s medical condition, both of which are referenced throughout the TAC. *See* Ticketing Information for Plaintiff and Daughter; Letter from Dr. Madhoolika Verma, pediatrician. However, the Court will not consider the additional declarations and documents offered by the parties, all of which assert new facts outside of the TAC and cannot otherwise be incorporated by reference into the operative complaint.

favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[4] "The issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

Accordingly, dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). At the same time, plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005) (quoting *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## DISCUSSION

Plaintiff's suit challenges "the discriminatory, arbitrary, and stigmatizing treatment directed at his disabled child" from Air China's refusal to permit plaintiff and K.L. to board their flight. TAC ¶ 20. Plaintiff raises claims for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) negligent misrepresentation; and (5) disability discrimination in violation of New York State Human Rights Law and New York City Human Rights Law. TAC ¶¶ 21–44. Defendant moves to dismiss the entirety of plaintiff's complaint on the grounds that the Montreal Convention preempts plaintiff's suit and that the suit is otherwise barred by its Conditions of Carriage. *See* Mot. 10–20.

---

[4] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

### I.     Montreal Convention

The Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention" or "Convention") is an international treaty and successor to the Warsaw Convention. *See* Convention, pmbl., *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000); *Ehrlich v. Am. Airlines. Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). Whereas the Warsaw Convention sought to encourage the development of commercial aviation by limiting liability, the Montreal Convention reflects an additional consideration: "the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution." *Ehrlich*, 360 F.3d at 371 n.4 (quoting Montreal Convention, pmbl.). Nevertheless, the Montreal Convention "retains many of [the] original provisions and terms [of the Warsaw Convention] and thus courts have continued to rely on cases interpreting equivalent provisions in the Warsaw Convention." *See, e.g.*, *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 205 (E.D.N.Y. 2012); *Cohen v. Am. Airlines, Inc.*, 13 F.4th 240, 245 (2d Cir. 2021) (collecting cases and holding that "Montreal Convention provisions may be analyzed in accordance with case law arising from substantively similar provisions of its predecessor, the Warsaw Convention").

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft[.]" Convention art. 1, § 1. "International carriage" means, "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated . . . within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." Convention art. 1, § 2.

Claims that fall under the substantive scope of the Warsaw Convention and the Montreal Convention are preempted. *See King v. Am. Airlines, Inc.*, 284 F.3d 352, 357 (2d Cir. 2002) ("[P]assengers [are] denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all."). Article 29 provides the Convention's preemptive effect: "In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention[.]" Convention art. 29. Accordingly, "[a]ll state law claims allegedly arising from a damaging event covered by the Convention as well as all subsequent tortious conduct which cannot be artificially separated from the precipitating cause, are preempted by the Convention." *Yanovskiy v. Air France*, No. 98-cv-9055, 173 F.3d 848 (2d Cir. April 23, 1999*)* (unpublished table opinion) (applying Warsaw Convention). Likewise, civil rights and discrimination claims are "precluded . . . if they arise from acts that fall under the Montreal Convention's substantive scope." *Sanches-Naek v. TAP Portugal, Inc.*, 260 F. Supp. 3d 185, 192–96 (D. Conn. 2017) (holding discrimination claim was preempted by Article 17 of the Montreal Convention where it arose from an event taking place during the embarking of an airplane, thus falling within the Convention's substantive scope).

The Convention provides for carrier liability for the following three categories of damages arising out of the international carriage of passengers or goods by airlines. Article 17 provides for carrier liability for death or bodily injury of a passenger or the destruction, loss of, or damage to baggage. Convention art. 17. Article 18 provides for liability for damage to baggage during carriage by air. *Id.* art. 18. Most relevant here,

Article 19 of the Montreal Convention governs claims arising from delay in international air transportation:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Convention art. 19.

The Court notes that both parties raise arguments as to Article 17 of the Convention. However, both parties also seemingly agree that Article 17 is not implicated here, though for differing reasons. Plaintiff argues that his claims do not fall into the substantive scope of Article 17 because he was not at the gate to board his plane, but instead at the non-secure counter attempting to check in. Opp'n 11–12. Thus, he was not embarking or disembarking a flight as contemplated by Article 17. Opp'n 13–14. Meanwhile, defendant argues that Article 17 is inapplicable, and instead it is Article 19 which applies and preempts plaintiff's claims. Reply 8–9. Accordingly, it is unnecessary for the Court to address the merits of the parties' Article 17 arguments.

### A. Article 19

Defendant characterizes Air China's conduct as a delay in transportation, falling within the scope of Article 19 of the Montreal Convention, and thus preempting plaintiff's claims. Mot. 14–15. Plaintiff argues that his claims are not grounded in Air China's delay in providing transportation, but instead in its failure to provide any transportation, or put otherwise, total nonperformance. Opp'n 14. Accepting plaintiff's allegations as true as the Court must at this stage, plaintiff's factual allegations support claims for Air China's nonperformance, and thus, the claims do not fall within the substantive scope of the Montreal Convention.

Here, plaintiff alleges that when he and his daughter attempted to check in, they were refused by Air China staff on the grounds that a medical letter was necessary for K.L. to fly due to her epilepsy. TAC ¶ 7. Even then, plaintiff did not immediately book with a different carrier, he requested a copy of the policy or regulation, informed the agents that his child had flown internationally multiple times a year, including on Air China flights, and also that plaintiff's wife was a licensed pediatrician that could explain K.L.'s condition and fitness to fly. TAC ¶¶ 8–12. Despite this, Air China still refused to check plaintiff and his daughter into their flight. TAC ¶ 12. The next day, when attempting to reserve another flight on Air China to Bejing, plaintiff was informed by Air China's customer service that he was marked as having not shown up for his flight. TAC ¶ 14. There are no allegations that defendant offered plaintiff alternative travel arrangements. Plaintiff alleges that due to Air China's denial, he purchased replacement tickets on another airline. TAC ¶ 18.

Defendant argues that when presented with claims based on an airline's refusal to fly passengers, other courts have construed those claims as sounding in delay, within the scope of Article 19 of the Convention. Mot. 13 (citing *Badar v. Swissport USA, Inc.*, 53 F.4th 739, 749–51 (2d Cir. 2022), *Unger v. Lot Polish Airlines*, No. 24-cv-04646, 2025 WL 1685248, at *5 (E.D.N.Y. June 16, 2025), and *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 112 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006)); *see* Reply 9–10 (same). However, in those cases, allegations existed which militated in favor of a finding of delay and are absent here. For example, the plaintiffs either secured alternate transportation without waiting to find out whether the defendant airline would transport them or refused a later flight. Defendant relies on one such case, *Paradis v. Ghana Airways Ltd.*, unsuccessfully. Mot. 13; *see* Reply 10. In *Paradis*, the plaintiff's breach of contract claim was preempted by Article 19 because he "reacted to a delay by immediately

8

procuring substitute transportation and demanding reimbursement from the airline." *Paradis*, 348 F. Supp. 2d at 112. Importantly, in *Paradis*, airline staff at the airport provided the plaintiff with instructions on how to rebook his flight the next day, *Paradis*, 348 F. Supp. 2d at 108–09, indicative of the airline's intent to perform under the parties' agreement. Rather than give the airline an opportunity to fulfill its contractual obligations the next day, the plaintiff booked a flight on a different courier that left within several hours. *Id.* at 109, 112.

Here, there is no allegation to support that Air China intended to fulfill its obligations, nor that plaintiff reacted "immediately" in booking with an alternate airline. *See Paradis*, 384 F. Supp. 2d at 112. Instead, at the airport, despite plaintiff's attempts to check into his flight, Air China refused. Moreover, there is no indication that plaintiff was offered any alternative travel arrangements by Air China. Instead, he was marked as a no-show for his flight. Further, unlike in *Paradis*, plaintiff gave Air China an opportunity to fulfill its obligations by contacting the airline the following day to make new flight arrangements but was still unable to do so. TAC ¶ 14. Air China's conduct as alleged in the complaint is more akin to nonperformance of a contract rather than an intent to provide delayed transportation.

Because plaintiff alleges that Air China simply refused to fly him and his daughter, without offering alternate transportation,[5] the allegations are not analogous to the cases

---

[5]    As stated *supra* note 2, both parties have included declarations that provide additional facts, including allegations as to what occurred after plaintiff was refused transportation at the airport. Defendant curiously asks the Court to consider its declaration while casting away plaintiff's declaration, arguing it asserts new facts not in the TAC. Reply 6–8. The Court declines this invitation and does not rely on the facts in either declaration in forming the basis of this Order aside from, as noted, *supra* note 2. However, the Court notes that to the extent the parties seem to dispute the facts around

cited by defendant, but instead to the Seventh Circuit decision relied on by the cases plaintiff cites, *Wolgel v. Mexicana Airlines*, 821 F.3d 442 (7th Cir. 1987). *See* Opp'n 14. In *Wolgel*, the Court found the plaintiffs' claims did not stem from "their delay in getting to [their destination]" but "were based on the fact that . . . they never left the airport." 821 F.2d at 445. Specifically, the plaintiffs were "bumped" from their flight but not placed on a later flight. *Id*. at 444. To reach its holding that these circumstances were a case of nonperformance rather than delay, the *Wolgel* Court relied on the drafting history of the Warsaw Convention: "[I]t became clear among the delegates that there was no need for a remedy in the Convention for total nonperformance of the contract, because in such a case the injured party has a remedy under the law of his or her home country. The delegates therefore agreed that the Convention should not apply to a case of nonperformance of a contract." *Id*. The Court finds the reasoning of *Wolgel* persuasive, in that it held that the plaintiffs' claim for nonperformance was outside Article 19's substantive scope and thus not preempted. *Id*.; *see also Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 362, 369 (S.D.N.Y. 2006) (holding claims brought by passengers "involuntarily denied boarding or bumped from a flight" are appropriately "read as grounded in a cause of action for non-performance of contract and not delay" and "therefore, not preempted by the Montreal Convention").

Accordingly, the allegations concerning the underlying injury from which plaintiff's claims arise—total refusal to fly ticketed passengers—has not been shown to fall

---

whether defendant was willing to rebook plaintiff on another flight for a fee, this appears to be a factual dispute that is not appropriately resolved at the motion to dismiss stage.

within the scope of Article 19, or any other provision of the Convention. Thus, plaintiff's claims are not preempted.[6]

## II.   Conditions of Carriage

This case is also not barred by defendant's Conditions of Carriage. Defendant contends its Conditions of Carriage preclude this suit because defendant was acting in accordance with Section 5.1, which provides: "In the exercise of our discretion, we can refuse to transport you to ensure the safety and order of air transportation if . . . [t]he transportation of you may endanger or affect the safety, health, convenience, comfort of yours or other passengers or crew members." Wang Decl. Ex. B ("Conditions of Carriage") at 18, ECF No. 25-1; *see* Mot. 20. Defendant argues that this provision gave them a basis to condition K.L.'s travel on the provision of a medical letter and denying carriage when plaintiff failed to provide the letter. Mot. 20.

As stated *supra* note 2, the Court will not consider the Conditions of Carriage. The document was not discussed or relied on in the complaint such that the Court could incorporate it by reference.

Further, the allegations in the TAC do not support the reasonable inference that there was an Air China policy or regulation that required plaintiff to provide a medical letter. Indeed, plaintiff alleges that he requested the policy or regulation and was told by the agent to "Google it." TAC ¶ 8. He was not provided with the Conditions of Carriage or any other regulation. TAC ¶¶ 8–9. Plaintiff also alleges that at the airport and in written communications with Air China he requested the basis of this asserted requirement and

---

[6]      The Court does not address defendant's alternative argument that plaintiff's claims fail under the Montreal Convention, *see* Mot. 15–19, because plaintiff's claims are not preempted by the Convention.

did not receive a satisfactory response.[7] Moreover, plaintiff alleged that his daughter has previously flown on international Air China flights without a medical letter. TAC ¶ 11. Thus, there is nothing in the complaint that would support that Air China's Conditions of Carriage authorized the denial of plaintiff's travel without a medical letter.

## CONCLUSION

For reasons stated herein, defendant's motion to dismiss is **DENIED.** The case is respectfully referred to Judge Clay Kaminsky for pretrial supervision.

**SO ORDERED.**

_/s/Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge

Dated:      May 12, 2026
            Brooklyn, New York

---

[7]      Defendant relies on the First Amended Complaint ("FAC"), ECF No. 9, to argue Air China explained its actions requiring a medical letter to plaintiff. Mot. 16. Defendant points out that between the FAC and TAC, plaintiff removed an allegation helpful to defendant; the allegation stated: "Defendant justified its actions [in requiring a medical letter] by claiming the flight was long and therefore required proof from a doctor that the child could tolerate the duration[.]" FAC ¶ 15. To support their argument, defendant asks the Court to disregard the TAC and instead give credence to the FAC. Mot. 16 n.5. Generally, "an amended complaint supersedes the original complaint." *Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009); *see Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). Here, there is no basis for the Court to not rely on the operative complaint, the TAC. Moreover, it appears that while the TAC is silent where the amended complaint was not, the new allegations do not "directly contradict" plaintiff's prior allegations, at least not to the extent the defendant suggests. *See Palm Beach Strategic Income, LP v. Salzman*, No. 10-cv-00261, 2011 WL 1655575, at * 5–6 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) ("[I]n a typical case, a prior inconsistent pleading should not trump the Court's obligation under Rule 12(b)(6) to accept a complaint's allegations as true.").